**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**Tampa Division**

**JOSHUA EUGENE BENNETT,**                                    CASE NO.:

    Plaintiff,

    v.

**EQUIFAX INFORMATION SERVICES**
**LLC, EXPERIAN INFORMATION**
**SOLUTIONS, INC., TRANS UNION, LLC,**
**and TRUIST BANK,**

    Defendants.

_____/

## <u>PLAINTIFF'S COMPLAINT</u>
### JURY DEMAND

1.      Plaintiff, Joshua Eugene Bennett (hereinafter "Plaintiff" or "Mr. Bennett"), brings this action against Defendants Equifax Information Services LLC ("Equifax"), Experian Information Solutions, Inc. ("Experian"), and Trans Union, LLC ("Trans Union") (collectively, the "credit reporting agencies" or "CRAs"), and against Defendant Truist Bank ("Truist Bank" or the "Furnisher Defendant"), for violations of the Fair Credit Reporting Act, 15 U.S.C. § 1681 *et seq.* (hereinafter the "FCRA").

### JURISDICTION AND VENUE

2.      This Court has jurisdiction under 28 U.S.C. § 1331 because this action arises under the laws of the United States.

3.     Defendants' voluntary contact with Plaintiff in Florida made it foreseeable that they would be hailed into a Florida court. *See Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 474 (1985).

4.     Venue here is proper under 28 U.S.C. § 1391 because a substantial part of the events giving rise to the claim occurred in Broward County, Florida, where Plaintiff resides.

### PARTIES

5.     Plaintiff is a natural person who, at all times relevant to this action, is and was a resident of Manatee County, Florida, and is a "consumer" as defined by 15 U.S.C. § 1681a(c).

6.     Equifax is a "consumer reporting agency" as defined by the FCRA, 15 U.S.C. § 1681a(f). Equifax is a Georgia limited liability company incorporated under the laws of the State of Delaware that engages in the business of assembling, evaluating, and disbursing information concerning consumers for the purpose of furnishing consumer reports as defined in 15 U.S.C. § 1681d to third parties.

7.     Experian is a "consumer reporting agency" as defined by the FCRA, 15 U.S.C. § 1681a(f). Experian is an Ohio corporation incorporated under the laws of the State of Delaware that engages in the business of assembling, evaluating, and disbursing information concerning consumers for the purpose of furnishing consumer reports as defined in 15 U.S.C. § 1681d to third parties.

8.     Trans Union is a "consumer reporting agency" as defined by the FCRA, 15 U.S.C. § 1681a(f). Trans Union is a limited liability company incorporated

under the laws of the State of Delaware, whose members are citizens of the State of Illinois, that engages in the business of assembling, evaluating, and disbursing information concerning consumers for the purpose of furnishing consumer reports as defined in 15 U.S.C. § 1681d to third parties.

9.      Defendant Truist Bank ("Truist Bank") is a national banking association that regularly conducts business in the State of Florida or is registered to conduct business in the State of Florida with a principal place of business located at 214 North Tryon Street, Charlotte, North Carolina 28202. At all relevant times, it was a "user" as defined by the FCRA. Truist Bank regularly furnishes information relating to consumers to consumer reporting agencies and is a "furnisher of information" within the meaning of 15 U.S.C. § 1681s-2.

10.     Defendants use instrumentalities of interstate commerce for the purpose of furnishing and exchanging information concerning consumers, which instrumentalities are largely electronic, written, or telephonic communications that have effects on consumers and their credit reports within the State of Florida.

**STATUTORY FRAMEWORK OF THE FAIR CREDIT REPORTING ACT**

11.     The Fair Credit Reporting Act, 15 U.S.C. §1681 et. seq., was originally enacted in 1970 for the purpose of regulating the collection, dissemination, and use of consumer credit information.

12.     Congress found that "[i]naccurate credit reports directly impair the efficiency of the banking system, and unfair credit reporting methods undermine

the public confidence which is essential to the continued functioning of the banking system." See 15 U.S.C. §1681(a)(1).

13. "The aim of the Fair Credit Reporting Act is to see that the credit reporting system serves the consumer as well as the industry. The consumer has a right to information which is accurate; he has a right to correct inaccurate or misleading information; he has a right to know when inaccurate information is entered into his file; he has a right to see that the information is kept confidential and is used for the purpose for which it is collected; and he has a right to be free from unwarranted invasions of his personal privacy." The Fair Credit Reporting Act seeks to secure these rights." Hearings on S. 823 Before the Subcomm. on Financial Institutions of the S. Comm. on Banking and Currency, 91st Cong. 2 (1969).

14. A "furnisher of information" provides information about consumers' credit history to credit reporting agencies. See 15 U.S.C. §1681s-2.

15. Congress also found that "[c]onsumer reporting agencies have assumed a vital role in assembling and evaluating consumer credit and other information on consumers" and that "[t]here is a need to insure that consumer reporting agencies exercise their grave responsibilities with fairness, impartiality, and a respect for the consumer's right to privacy." See 15 U.S.C. § 1681(a)(3),(4).

16. The FCRA was amended by Congress in 2003 by the Fair and Accurate Credit Transaction Act ("FACTA"), Pub L. No. 108-159 (2003), in order to, among

other things, "prevent identity theft, improve resolution of consumer disputes, [and] improve the accuracy of consumer records."

17.     Prior to the 2003 amendments, victims of identity theft were afforded no special protections under the FCRA. As such, consumer reporting agencies ("CRAs", and also referred to herein as "credit reporting agencies") were under no obligation to treat an identity theft claim any different than a regular dispute.

18.     The 2003 amendments made it easier for identity theft victims to get information resulting from identity theft removed from their credit reports. By enacting 15 U.S.C. § 1681c-2(a), Congress required credit reporting agencies to block the reporting of any information in the file of a consumer that the consumer identifies as resulting from identity theft, not later than four business days after receiving (1) appropriate proof of identity, (2) a copy of an identity theft report, (3) the identification of such information by the consumer, and (4) a statement by the consumer that the information is not information relating to any transaction by the consumer.

19.     A credit reporting agency may decline to "block" information only if the credit reporting agency reasonably determines that the consumer's request is made in error, was based on a material misrepresentation or the consumer obtained goods, services or money as a result of the blocked transaction. See 15 U.S.C. § 1681c-2(c)(1).. If a block is declined, the credit reporting agency must then notify the consumer promptly, in the same manner as consumers are notified of

5

the reinsertion of information under § 1681i(a)(5)(B).  See 15 U.S.C. §§ 1681c-2(c)(2).

20.    In the absence of such a determination of material misrepresentation or error, a credit reporting agency cannot decline a request to block without first requesting additional information from the consumer for the purpose of determining the validity of the alleged identity theft. See 12 C.F.R. § 1022.3(i)(1)(iii)(A).

21.    "[I]f a CRA receives a police report containing detailed information as well as the signature, badge number, or other identifying information for the officer taking the report, it is not reasonable for the CRA to request additional information without 'an identifiable concern,' such as an indication that the report was fraudulent." Osada v. Experian Info. Solutions, Inc., No. 11-C-2856, 2012 WL 1050067, at *3 (N.D. Ill. Mar. 28, 2012) (citing 16 C.F.R. § 603.3(c)(1) (renumbered at 12 C.F.R. § 1022.3(i)(3)(i)).

22.    The FCRA requires a credit reporting agency to "follow reasonable procedures to assure maximum possible accuracy of the information" each time it prepares a consumer report. 15 U.S.C. § 1681e(b).

23.    The FCRA requires that if a consumer disputes any item of information contained in their credit file, the credit reporting agency must "conduct a reasonable reinvestigation to determine whether the disputed information is inaccurate and record the current status of the disputed information, or delete the item from the file in accordance with paragraph (5),

before the end of the 30-day period beginning on the date on which the agency receives the notice of the dispute from the consumer or reseller."15 U.S.C.S. § 1681i(a)(1)(A).

24.    In performing the reinvestigation, the FCRA requires the credit reporting agency to "review and consider all relevant information submitted by the consumer in the period described in paragraph (1)(A) with respect to such disputed information." 15 U.S.C.S. § 1681i(a)(4).

25.    The FCRA also requires the credit reporting agency to provide notification of the dispute to the person who provided any item that is disputed, along with all relevant information received from the consumer regarding the dispute. 15 U.S.C.S. § 1681i(a)(2)(A).

26.    The FCRA requirements are important, because they help credit reporting agencies ensure that the information in their consumer reports is accurate, they assure that consumers know all the information that is in their files and who has received or requested their reports, and they protect consumer privacy.

27.    If the violation is negligent, the FCRA allows the consumer to recover actual damages. 15 U.S.C. § 1681o(a).

28.    If the violation is willful, the consumer may recover any actual damages, or statutory damages of not less than $100 and not more than $1,000, and punitive damages. 15 U.S.C. § 1681n(a).

29.    A consumer who succeeds on a FCRA action is also entitled to recover their costs and reasonable attorney fees.  15 U.S.C. §§ 1681n(a)(3), 1681o(a)(2).

30.    The FCRA provides a private right of action against any person that violates the provisions of the FCRA. See 15 U.S.C. §§ 1681o, 1691n.

31.    The FCRA prohibits a CRA from furnishing a consumer report on a consumer unless it has reason to believe that the person requesting the report intends to use the information in connection with a credit transaction, insurance underwriting, or other legitimate business purpose involving the consumer on whom the information is to be furnished. 15 U.S.C. § 1681b(a)(3).

32.    The FCRA prohibits a CRA from furnishing to any person a record of inquiries in connection with a credit or insurance transaction that is not initiated by a consumer. 15 U.S.C. § 1681b(c)(3).

33.    "Furnishers of information" under the FCRA, pursuant to 15 U.S.C. §1681s-2(b) conduct a reasonable investigation into each of the written disputes that it receives from the credit reporting agencies. See also Hinkle v. Midland Credit Mgmt., Inc., 827 F.3d 1295, 1302 (11th Cir. 2016).

34.    The FCRA requires credit reporting agencies to "follow reasonable procedures to assure maximum possible accuracy of" consumer reports. 15 U.S.C. § 1681e(b). If a consumer disputes information contained in their credit report, the FCRA requires a credit reporting agency to "conduct a reasonable reinvestigation to determine whether the disputed information is inaccurate and record the current status of the disputed information, or delete the item from the file in

accordance with paragraph (5), before the end of the 30-day period beginning on the date on which the agency receives the notice of the dispute from the consumer or reseller."15 U.S.C.S. § 1681i(a)(1)(A).

35.    If the disputed information is inaccurate or incomplete or cannot be verified, the consumer reporting agency "shall…(i)  promptly delete that item of information from the file of the consumer, or modify that item of information, as appropriate, based on the results of the reinvestigation; and (ii)  promptly notify the furnisher of that information that the information has been modified or deleted from the file of the consumer." 15 U.S.C. § 1681(a)(5)(A)(i),(ii).

36.    If the violation is negligent, the FCRA allows the consumer to recover actual damages (§ 1681o(a)); however, if the violation is willful, the consumer may recover any actual damages or statutory damages from not less than $100.00 and not more than $1,000. § 1681n(a).

37.    Under the FCRA, the term "consumer report" generally refers to any written, oral, or other communication of any information by a consumer reporting agency bearing on a consumer's credit worthiness, credit standing, credit capacity, character, general reputation, personal characteristics, or mode of living which is used or expected to be used or collected in whole or in part for the purpose of serving as a factor in establishing the consumer's eligibility for-

   (A)    credit or insurance to be used primarily for personal, family, or household purposes;

   (B)    employment purposes; or

9

(C)     any other purpose authorized under section 1681b of this title."

U.S.C. § 1681a(d)(1).

38.    The terms "consumer report", "credit report", and "consumer credit report" are used synonymously herein.

*National CRAs and Furnishers Communicate Consumer Disputes and Responses via the E-Oscar Reporting Platform*

39.    The FCRA requires CRAs to implement an automated reinvestigation system through which furnishers of information to the CRAs may report the results of a reinvestigation that finds incomplete or inaccurate information in a consumer's file. 15 U.S.C. § 1681i(a)(5)(D).

40.    To comply with the automated dispute reinvestigation requirements of the FCRA, Trans Union, Equifax, and Experian along with Innovis Data Solutions, Inc., developed and implemented a browser-based software system that allows the CRAs to electronically notify furnishers quickly and easily of disputed credit reporting information, and for furnishers to quickly and easily respond to such disputes following the furnisher's investigation of the disputed information.

41.    The system is commonly referred to as e-OSCAR (Online Solution for Complete and Accurate Reporting) and was designed to be Metro 2 compliant. See http://www.e-oscar.org/gettingstarted (last accessed December 9, 2025).

42.    The e-OSCAR system primarily supports Automated Credit Dispute Verification ("ACDV") and Automated Universal Data Form ("AUD") processing,

as well as other consumer-dispute-related processes. See http://www.e-oscar.org/gettingstarted (last accessed December 9, 2025).

43. The National CRAs provide notice of a consumer's dispute to data furnishers in the ACDV format and forward the ACDV to the furnisher through e-OSCAR.

44. If a furnisher's investigation of a consumer's dispute determines that the information in dispute is incomplete or inaccurate, the FCRA requires the furnisher to correct the information not only with the CRA that sent the ACDV, but with all other CRAs to whom the furnisher reported that information. 15 U.S.C. § 1681s-2(b)(1)(D).

45. The e-OSCAR system facilitates the furnisher's compliance with 15 U.S.C. § 1681s-2(b)(1)(D) by sending a "Carbon Copy" of an ACDV response "to each CRA with whom the [furnisher] has a reporting relationship" in addition to the response to the initiating CRA. See http://www.e-oscar.org/gettingstarted (last accessed December 9, 2025).

46. Additionally, a furnisher can manually correct a tradeline with a CRA other than the one that initiated a dispute by sending an AUD within e-OSCAR.

47. Trans Union, Experian, and Equifax each require data furnishers that report to them respectively to register with and use e-OSCAR, and state that e-OSCAR is "in compliance with FCRA and Metro 2 standards." See https://www.transunion.com/data-reporting/support-teams (last accessed December 9, 2025).

## FACTUAL ALLEGATIONS

### I. BACKGROUND INFORMATION

48.     Plaintiff is a documented victim of identity theft. Unknown individuals unlawfully used Plaintiff's personal identifying information to obtain one or more credit accounts without Plaintiff's knowledge, authorization or consent, causing Plaintiff to suffer adverse credit and financial consequences.

49.     Plaintiff reported the identity theft to law enforcement, specifically to the Manatee County Sheriff's Office. On or about September 3, 2025, Plaintiff filed an Incident Report with the Manatee County Sheriff's Office ("Police Report") concerning an unknown individual who opened a credit card account at Truist Bank on July 2, 2025 in Plaintiff's name without Plaintiff's knowledge, authorization or consent.

50.     The Police Report constitutes an "identity theft report" within the meaning of 15 U.S.C. § 1681a(q)(4).

51.     Plaintiff thereafter submitted written dispute letters to the credit reporting agencies by certified mail. In each written dispute, Plaintiff identified the specific fraudulent items, stated that they resulted from identity theft and did not relate to any transaction by Plaintiff, enclosed proof of his identity together with his Police Report, requested deletion of the fraudulent or inaccurate information and that the agency immediately block the fraudulent information. Each written dispute was delivered to the respective agency as set forth below.

### II.     DISPUTES WITH EQUIFAX and TRUIST BANK

52. On or about October 24, 2025, an investigation was conducted by Equifax regarding the disputed tradeline by Truist Bank, Partial Account No. 7532, wherein an Equifax investigation result verified this tradeline as accurate and belonging to Plaintiff and modified account status information. Plaintiff mailed a dispute letter to Equifax, which was duly received by Equifax on November 16, 2025, including Plaintiff's Police Report and driver's license, disputing the tradeline reported by Truist Bank, Partial Account No. 7532, Balance: $3,014, on the grounds of identity theft. Plaintiff did not open or authorize this account.

53. In response, Plaintiff received a letter from Equifax dated November 18, 2025 refusing to block the information concerning this disputed tradeline as requested by Plaintiff. Equifax's refusal to apply the fraud block constituted a failure to comply with its statutory obligations. Upon a further communication by Equifax concerning a further investigation result dated November 18, 2025, Equifax claimed the tradeline was no longer reporting. Upon reviewing a subsequent Equifax credit report dated December 17, 2025, the disputed tradeline itself was no longer reported, however, the hard inquiry concerning this account continued to be reported.

## III. DISPUTES WITH EXPERIAN and TRUIST BANK

54. Plaintiff mailed a dispute letter to Experian, which was duly received by Experian on October 14, 2025, including Plaintiff's Police Report dated September 3, 2025 and driver's license, disputing the tradeline reported by Truist Bank, Partial Account No. 451336, Balance: $3,014, specifically Plaintiff disputed

13

the tradeline as fraudulent as Plaintiff did not open or authorize this account and believed it was created by an identity thief.

55.    On or about October 22, 2025, Experian responded to Plaintiff's October 14, 2025 dispute letter refusing to block the information Plaintiff requested to block and requesting an identity theft report and personal identification which had already been provided as part of Plaintiff's dispute letter. Upon review of the subsequent Experian credit report dated December 1, 2025, the disputed tradeline had finally been removed.

## IV. DISPUTES WITH TRANS UNION and TRUIST BANK

56.    Plaintiff mailed a dispute letter to Trans Union, which was duly received by Trans Union on October 16, 2025, including Plaintiff's Police Report dated September 3, 2025 and driver's license, disputing the tradeline reported by Truist Bank, Partial Account No. 451336, Balance: $3,014, specifically Plaintiff disputed the tradeline as fraudulent as Plaintiff did not open or authorize this account and believed it was created by an identity thief.

57.    On or about October 21, 2025, an investigation was conducted by Trans Union regarding the disputed tradeline by Truist Bank, Partial Account No. 451336, wherein a Trans Union investigation result advised the disputed tradeline had been deleted from Plaintiff's credit report. Thereafter, on or about December 2, 2025, Plaintiff reviewed their Trans Union credit report and confirmed the tradeline was deleted and no longer being reported.

14

58.     On or about February 1, 2026, Plaintiff received a further investigation result from Trans Union claiming that the previously deleted disputed Truist Bank tradeline was now being reinserted as it was supposedly now verified as accurate and belonging to Plaintiff. Thereafter, upon Plaintiff's review of its Trans Union credit report dated April 8, 2026, the previously deleted disputed Truist Bank tradeline, Partial Account No. 451336, was now being reported again as verified and belonging to Plaintiff.

## V.     THE FURNISHER DEFENDANT'S FAILURE TO INVESTIGATE

59.     Truist Bank furnished the fraudulent Truist Bank tradeline to Equifax, Experian and Trans Union. After Plaintiff disputed that tradeline, Equifax, Experian and Trans Union each notified Truist Bank of the dispute by transmitting an ACDV to Truist Bank through the e-OSCAR system. Upon receiving notice of the dispute, Truist Bank verified the fraudulent tradeline as accurate, or otherwise failed to correct or delete it, and reported that result back to Equifax, Experian and Trans Union, notwithstanding that the account was fraudulent and did not belong to Plaintiff.

## VI.     PATTERN OF NONCOMPLIANCE AND PLAINTIFF'S INJURIES

60.     The credit reporting agencies' selective treatment of Plaintiff's disputes—deleting inquiries that they accepted as resulting from identity theft, while simultaneously verifying a related tradeline and inquiries that Plaintiff

identified as resulting from the same identity theft, supported by the same Police Report demonstrates that the agencies failed to conduct reasonable reinvestigations and failed to follow reasonable procedures to assure maximum possible accuracy.

61.     Despite receiving Plaintiff's identity-theft documentation, including his Police Report, neither Equifax, Experian, nor Trans Union acted to block or remove the disputed fraudulent tradeline. While the furnisher of information, Truist Bank failed to reasonably investigate the disputed tradeline and communicate the deletion or revision of fraudulent or inaccurate information as required.

62.     Defendants' derogatory and inaccurate reporting of the above-described tradelines or inquiries on Plaintiff's credit reports negatively reflects upon Plaintiff's financial obligations, credit score and credit worthiness to existing and potential creditors.

63.     Courts have regularly held that allegations of lower credit scores, taken as true, are sufficient to allege a concrete injury-in-fact for the purposes of standing under Article III. See Pedro v. Equifax, Inc., 868 F.3d 1275 (11th Cir. 2017) ("[H]er credit score dropped 100 points as a result of the challenged conduct. Because Pedro alleged that she suffered an injury in fact, she has standing to pursue her complaint."); See Diedrich v. Ocwen Loan Servicing, LLC, 839 F.3d 583 (7th Cir. 2016) (standing where Plaintiffs alleged that they "have suffered damage to their credit and been forced to pay Ocwen greater payments and a higher interest

rate"); See Santangelo v. Comcast Corp., 162 F. Supp. 3d 691 (N.D. Ill. 2016) ("a depleted credit score is sufficient to constitute an injury-in-fact for the purposes of establishing Article III standing"); See Rothman v. U.S. Bank Nat'l Ass'n, No. 13-03381, 2014 U.S. Dist. LEXIS 141100, 2014 WL 4966907, at *5 (N.D. Cal. Oct. 3, 2014) ("Injury to a credit score is sufficient to constitute 'actual damages'"); See Adams v. Fifth Third Bank, No. 3:16-CV-00218-TBR, 2017 U.S. Dist. LEXIS 18932 (W.D. Ky. Feb. 9, 2017) ("Plaintiffs' allegations of lower credit scores … are sufficient to allege a concrete injury-in-fact for the purposes of standing under Article III."); and, See Coulbertson v. Experian Info. Sols., Inc., No. 16-cv-05672-RS, 2017 U.S. Dist. LEXIS 69484 (N.D. Cal. Mar. 24, 2017) ("At a minimum, Coulbertson has alleged a sufficient injury-in-fact through her claim that her credit score suffered as a result of the credit report she disputes").

64.    As a result of Defendants' conduct, including but not limited to the continued publication of inaccurate information concerning tradelines, Plaintiff suffered concrete injuries, including but not limited to emotional distress and manifestations of emotional distress associated with fraudulent information remaining  in his credit files, damage to his reputation for credit worthiness, loss of the ability to purchase and benefit from credit, time spent dealing with credit report disputes, expenses associated with credit report disputes and the deprivation of his statutory rights to accurate reporting and meaningful dispute resolution. These injuries are concrete and particularized and confer standing under Article III. See *Coulter v. Sagestream, LLC*, 501 F.Supp.3d 298 (2020);

17

*Norman v. Trans Union, LLC*, 669 F.Supp.3d 351 (2023); *Chaitoff v. Experian Information Solutions, Inc.*, 79 F.4th 800 (2023).

## COUNT I - VIOLATIONS OF 15 U.S.C. §1681e(b)
## AGAINST TRANS UNION

65.    Plaintiff incorporates by reference paragraphs 1, 3-5, 8, 10-51, and 56-64 as if fully stated herein.

66.    Trans Union violated 15 U.S.C. § 1681e(b) by failing to establish or to follow reasonable procedures to assure maximum possible accuracy in the preparation of the credit report and credit files it publishes and maintains concerning the Plaintiff.

67.    After receiving Plaintiff's disputes, Trans Union was placed on notice that it was reporting inaccurate information, yet Trans Union continues to include the inaccurate information in Plaintiff's credit file.

68.    Trans Union's acts and/or omissions were willful, rendering it liable to Plaintiff for punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. §1681n.

69.    In the alternative, Trans Union negligently violated the FCRA entitling Plaintiff to

recover under 15 U.S.C. §1681o.

WHEREFORE, Plaintiff prays this Honorable Court to enter the following relief against Trans Union in the form of actual damages, statutory damages, punitive damages, attorneys' fees, litigation expenses and costs, interest as

permitted by law, and such other and further relief including as the Court deems equitable and just under the circumstances.

## COUNT II – VIOLATIONS OF 15 U.S.C. § 1681i(a)(5)(B) AGAINST TRANS UNION

70.    Plaintiff incorporates by reference paragraphs 1, 3-5, 8, 10-51, and 56-64 as if fully stated herein.

71.    At all times relevant hereto, Trans Union is and was a "consumer reporting agency," and Plaintiff was a "consumer," as provided for under the FCRA.

72.    Trans Union deleted the Truist Bank tradeline from Plaintiff's file and thereafter reinserted the previously deleted item, as reflected in reinvestigation results dated February 1, 2026.

73.    Trans Union violated 15 U.S.C. § 1681i(a)(5)(B) by reinserting the previously deleted tradelines without providing Plaintiff the required written notice of reinsertion within five business days and without providing the required certification that the reinserted information is complete and accurate.

74.    Trans Union's acts or omissions were willful, rendering it liable to Plaintiff for statutory and punitive damages pursuant to 15 U.S.C. § 1681n; in the alternative, Trans Union negligently violated the FCRA, entitling Plaintiff to recover under 15 U.S.C. § 1681o.

WHEREFORE, Plaintiff prays this Honorable Court to enter the following relief against Trans Union in the form of actual damages, statutory damages, punitive damages, attorneys' fees, litigation expenses and costs, interest as

permitted by law, and such other and further relief as the Court deems equitable and just under the circumstances.

## COUNT III – VIOLATIONS OF 15 U.S.C. § 1681i(a)(5)(C) AGAINST TRANS UNION

75.     Plaintiff incorporates by reference paragraphs 1, 3-5, 8, 10-51, and 56-64 as if fully stated herein.

76.     At all times relevant hereto, Trans Union is and was a "consumer reporting agency," and Plaintiff was a "consumer," as provided for under the FCRA.

77.     Section 1681i(a)(5)(C) of the FCRA requires a consumer reporting agency to "maintain reasonable procedures designed to prevent the reappearance in a consumer's file, and in consumer reports on the consumer, of information that has been deleted pursuant to this paragraph and is not reinserted in accordance with subparagraph (B)."

78.     Defendant deleted the Truist Bank Tradeline from Plaintiff's consumer file pursuant to 15 U.S.C. §1681i(a)(1), triggering Defendant's independent and ongoing obligation under 15 U.S.C. §1681i(a)(5)(C) to maintain reasonable procedures to prevent that same information from reappearing absent a valid furnisher certification under subparagraph (B).

79.     Defendant failed to maintain reasonable procedures to prevent the reappearance of the Tradeline, in that Defendant's systems permitted the deleted Tradeline to be reattached to Plaintiff's consumer file, and to reappear on consumer reports issued to third parties, without any certification from the

furnisher and without any manual review or safeguard reasonably designed to catch and prevent unauthorized reinsertion.

80. Defendant's failure to maintain reasonable procedures under 15 U.S.C. §1681i(a)(5)(C) was not limited to Plaintiff's file; on information and belief, Defendant's reinsertion practices reflect a systemic deficiency affecting other similarly situated consumers whose previously deleted tradelines have likewise reappeared without certification or notice.

81. As a direct and proximate result of Defendant's violation of 15 U.S.C. § 1681i(a)(5)(C), Plaintiff suffered actual damages as described above, including damage to his credit standing and consumer reports that reasonable procedures would have prevented.

82. Trans Union's acts or omissions were willful, rendering it liable to Plaintiff for statutory and punitive damages pursuant to 15 U.S.C. § 1681n; in the alternative, Trans Union negligently violated the FCRA, entitling Plaintiff to recover under 15 U.S.C. § 1681o.

WHEREFORE, Plaintiff prays this Honorable Court to enter the following relief against Trans Union in the form of actual damages, statutory damages, punitive damages, attorneys' fees, litigation expenses and costs, interest as permitted by law, and such other and further relief as the Court deems equitable and just under the circumstances.

### COUNT IV - VIOLATIONS OF 15 U.S.C. § 1681c-2
### AGAINST TRANS UNION

83. Plaintiff incorporates by reference paragraphs 1, 3-5, 8, 10-51, and 56-64 as if fully stated herein.

84. At all times relevant hereto, Trans Union is and was a "consumer reporting agency," and Plaintiff was a "consumer," as provided for under the FCRA.

85. Plaintiff identified to Trans Union information in his file that resulted from identity theft, provided proof of identity, provided an identity theft report in the form of his Police Report, and stated that the information did not relate to any transaction by Plaintiff.

86. Trans Union violated 15 U.S.C. § 1681c-2 by failing to block, within four business days of receipt, the reporting of the fraudulent Truist Bank tradeline that Plaintiff identified as resulting from identity theft.

87. Trans Unions' acts or omissions were willful, rendering it liable to Plaintiff for statutory and punitive damages pursuant to 15 U.S.C. § 1681n; in the alternative, Trans Union negligently violated the FCRA, entitling Plaintiff to recover under 15 U.S.C. § 1681o.

WHEREFORE, Plaintiff prays this Honorable Court to enter the following relief against Trans Union in the form of actual damages, statutory damages, punitive damages, attorney's fees, litigation expenses and costs, interest as permitted by law, and such other and further relief as the Court deems equitable and just under the circumstances.

**COUNT V - VIOLATIONS OF 15 U.S.C. §1681i**
**AGAINST EXPERIAN**

22

88.    Plaintiff incorporates by reference paragraphs 1, 3-5, 7, 10-51, 54-55, and 59-64 as if fully stated herein.

89.    During the relevant time frame, Experian received Plaintiff's dispute which requested that information be removed from his credit file.

90.    Experian violated 15 U.S.C. § 1681i by failing to correct, update or delete inaccurate information in Plaintiff's credit file after receiving actual notice of inaccuracies contained therein.

91.    Experian's acts or omissions were willful, rendering it liable to Plaintiff for punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. §1681n.

92.    Alternatively, Experian negligently violated the FCRA entitling Plaintiff to recover under 15 U.S.C. §1681o.

WHEREFORE, Plaintiff prays this Honorable Court to enter the following relief against Experian in the form of actual damages, statutory damages, punitive damages, attorneys' fees, litigation expenses and costs, interest as permitted by law, and such other and further relief including as the Court deems equitable and just under the circumstances.

### COUNT VI - VIOLATIONS OF 15 U.S.C. §1681e(b) AGAINST EXPERIAN

93.    Plaintiff incorporates by reference paragraphs 1, 3-5, 7, 10-51, 54-55, and 59-64 as if fully stated herein.

23

94.    Experian violated 15 U.S.C. § 1681e(b) by failing to establish or to follow reasonable procedures to assure maximum possible accuracy in the preparation of the credit report and credit files it publishes and maintains concerning the Plaintiff.

95.    After receiving Plaintiff's disputes, Experian was placed on notice that it was reporting inaccurate information, yet Experian continued to include the inaccurate information in Plaintiff's credit file.

96.    Experian's acts and/or omissions were willful, rendering it liable to Plaintiff for punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. §1681n.

97.    In the alternative, Trans Union negligently violated the FCRA entitling Plaintiff to recover under 15 U.S.C. §1681o.

WHEREFORE, Plaintiff prays this Honorable Court to enter the following relief against Experian in the form of actual damages, statutory damages, punitive damages, attorneys' fees, litigation expenses and costs, interest as permitted by law, and such other and further relief including as the Court deems equitable and just under the circumstances.

## COUNT VII - VIOLATIONS OF 15 U.S.C. § 1681c-2 AGAINST EXPERIAN

98.    Plaintiff incorporates by reference paragraphs 1, 3-5, 7, 10-51, 54-55, and 59-64 as if fully stated herein.

24

99.    At all times relevant hereto, Experian is and was a "consumer reporting agency," and Plaintiff was a "consumer," as provided for under the FCRA.

100.    Plaintiff identified to Experian information in his file that resulted from identity theft, provided proof of identity, provided an identity theft report in the form of his Police Report, and stated that the information did not relate to any transaction by Plaintiff.

101.    Experian violated 15 U.S.C. § 1681c-2 by failing to block, within four business days of receipt, the reporting of the fraudulent Truist Bank tradeline that Plaintiff identified as resulting from identity theft.

102.    Experian's acts or omissions were willful, rendering it liable to Plaintiff for statutory and punitive damages pursuant to 15 U.S.C. § 1681n; in the alternative, Experian negligently violated the FCRA, entitling Plaintiff to recover under 15 U.S.C. § 1681o.

WHEREFORE, Plaintiff prays this Honorable Court to enter the following relief against Experian in the form of actual damages, statutory damages, punitive damages, attorney's fees, litigation expenses and costs, interest as permitted by law, and such other and further relief as the Court deems equitable and just under the circumstances.

## COUNT VIII - VIOLATIONS OF 15 U.S.C. §1681i
## AGAINST EQUIFAX

25

103. Plaintiff incorporates by reference paragraphs 1, 3-6, 10-53, and 59-64 as if fully stated herein.

104. During the relevant time frame, Equifax received Plaintiff's disputes which requested that information be removed from his credit file.

105. Equifax violated 15 U.S.C. § 1681i by failing to correct, update or delete inaccurate information in Plaintiff's credit file after receiving actual notice of inaccuracies contained therein.

106. Equifax's acts or omissions were willful, rendering it liable to Plaintiff for punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. §1681n.

107. Alternatively, Equifax negligently violated the FCRA entitling Plaintiff to recover under 15 U.S.C. §1681o.

WHEREFORE, Plaintiff prays this Honorable Court to enter the following relief against Equifax in the form of actual damages, statutory damages, punitive damages, attorneys' fees, litigation expenses and costs, interest as permitted by law, and such other and further relief including as the Court deems equitable and just under the circumstances.

## COUNT IX - VIOLATIONS OF 15 U.S.C. §1681e(b) AGAINST EQUIFAX

108. Plaintiff incorporates by reference paragraphs 1, 3-6, 10-53, and 59-64 as if fully stated herein.

109. Equifax violated 15 U.S.C. § 1681e(b) by failing to establish or to follow

26

reasonable procedures to assure maximum possible accuracy in the preparation of the credit report and credit files it publishes and maintains concerning the Plaintiff.

110. After receiving Plaintiff's dispute, Equifax was placed on notice that it was reporting inaccurate information, yet Equifax continued to include the inaccurate information in Plaintiff's credit file.

111. Equifax's acts and/or omissions were willful, rendering it liable to Plaintiff for punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. §1681n.

112. In the alternative, Equifax negligently violated the FCRA entitling Plaintiff to recover under 15 U.S.C. §1681o.

WHEREFORE, Plaintiff prays this Honorable Court to enter the following relief against Equifax in the form of actual damages, statutory damages, punitive damages, attorneys' fees, litigation expenses and costs, interest as permitted by law, and such other and further relief including as the Court deems equitable and just under the circumstances.

## COUNT X - VIOLATIONS OF 15 U.S.C. § 1681c-2 AGAINST EQUIFAX

113. Plaintiff incorporates by reference paragraphs 1, 3-6, 10-53, and 59-64 as if fully stated herein.

114. At all times relevant hereto, Equifax is and was a "consumer reporting agency," and Plaintiff was a "consumer," as provided for under the FCRA.

27

115.    Plaintiff identified to Equifax information in his file that resulted from identity theft, provided proof of identity, provided an identity theft report in the form of his Police Report, and stated that the information did not relate to any transaction by Plaintiff.

116.    Equifax violated 15 U.S.C. § 1681c-2 by failing to block, within four business days of receipt, the reporting of the fraudulent Truist Bank tradeline that Plaintiff identified as resulting

from identity theft.

117.    Equifax's acts or omissions were willful, rendering it liable to Plaintiff for statutory and punitive damages pursuant to 15 U.S.C. § 1681n; in the alternative, Equifax negligently violated the FCRA, entitling Plaintiff to recover under 15 U.S.C. § 1681o.

WHEREFORE, Plaintiff prays this Honorable Court to enter the following relief against Equifax in the form of actual damages, statutory damages, punitive damages, attorney's fees, litigation expenses and costs, interest as permitted by law, and such other and further relief as the Court deems equitable and just under the circumstances.

## COUNT XI - VIOLATIONS OF 15 U.S.C. §1681s-2(b) AGAINST TRUIST BANK

118.    Plaintiff incorporates by reference paragraphs 1, 3-5, and 9-64 as if fully stated herein.

28

119.   Truist Bank is a furnisher under the FCRA because it provides consumer credit information concerning consumers to credit reporting agencies.

120.   Truist Bank violated 15 U.S.C. §1681s-2(b) by failing to fully and properly investigate Plaintiff's disputes when it failed to review all relevant information provided by the credit reporting agencies and timely communicate with the credit reporting agencies to block or delete disputed information or tradelines.

121.   As a result of Truist Bank's violations of the FCRA, Plaintiff has been damaged. Truist Bank negligently violated FCRA entitling Plaintiff to recover under 15 U.S.C. §1681o. Additionally, Truist Bank committed a willful violation of the FCRA entitling Plaintiff to recover under 15 U.S.C. §1681n(a).

122.   Plaintiff is entitled to an award of prevailing party attorney's fees pursuant to 15 U.S.C. §1681.

WHEREFORE, Plaintiff prays this Honorable Court to enter the following relief against Truist Bank in the form of actual damages, statutory damages, punitive damages, Attorneys' fees, litigation expenses and costs, interest as permitted by law, and such other and further relief as the Court deems equitable and just under the circumstances.

## JURY DEMAND

Plaintiff demands a trial by jury on all issues so triable.

Dated: 7/22/2026                    Respectfully submitted,

                                    SHARMIN & SHARMIN, P.A.

29

/s/ Eyal S. Eisig
Eyal S. Eisig, Esq.
eyal@sharminlaw.com
FBN: 109438
830 North Federal Highway
Lake Worth Beach, FL 33460
Main: 561-655-3925
Fax: (844) 921-1022

Attorneys for Plaintiff